### McCormick *v.* McKinnon.

Dec. 7, 1953

No. 38884 45 Adv. S. 55 68 So. 2d 301

*O. B. Triplett, Jr.,* Forest, for appellant.

*McFarland & McFarland,* Bay Springs, for appellee.

187

KYLE, J.

This case is before us on appeal by H. F. McCormick, defendant and cross complainant in the court below, from a decree of the Chancery Court of Jasper County in favor of the said H. F. McCormick for the sum of $226.20, which was the amount found to be due and owing to him by Dan McKinnon, complainant and cross-defendant in the court below, after the allowance of a counterclaim interposed by McKinnon, on account of money advanced by McCormick to McKinnon for the payment of two installments of the purchase price of a Diesel truck and tandem trailer and for the payment of repair bills on said truck.

The record shows that during the month of February 1951 the appellee, Dan McKinnon, purchased a 1951 Model GMC Diesel truck with a Kingham tandem trailer, from the appellant, H. F. McCormick, for the total purchase price of approximately $11,000. The sum of $3,000 was paid in cash, and the balance of the purchase price was evidenced by an installment purchase money note, payable in 24 equal monthly installments, which was assigned to the Yellow Manufacture's Acceptance Corporation. On December 22, 1951, McKinnon stored the truck and the trailer with McCormick. Two monthly installments of the purchase price amounting to $837 were then due and owing to the YMAC, and McCormick

agreed to pay the same for McKinnon. McKinnon then prepared and McCormick signed a bailment agreement, in which McCormick acknowledged receipt of the truck and trailer and agreed to try to sell the same for McKinnon. The bailment agreement provided that McKinnon should have the right to pick up the truck and trailer at any time upon the repayment to McCormick of the $837 that McCormick agreed to pay for McKinnon to the YMAC. On February 12, 1952, McKinnon called to see McCormick and asked that the truck and trailer be redelivered to him. McKinnon gave McCormick one check for $837, which represented the amount paid by McCormick to the YMAC, and one check for $139.20 to cover the cost of certain repairs made on the truck.

When McKinnon returned to Bay Springs with the truck he checked the speedometer, and discovered that the mileage had been increased approximately 5,000 miles during the time that the truck was stored with McCormick. McKinnon immediately stopped payment on the checks, and called McCormick on the telephone about the matter. But McKinnon and McCormick failed to agree upon a settlement, and a few days later McCormick filed an affidavit in replevin and had the truck and trailer seized under a writ of replevin. McKinnon made bond for the truck and trailer in the sum of $15,000. McCormick then caused an alias writ of replevin to be issued; but McKinnon refused to surrender the truck and trailer. McKinnon then filed a bill in the chancery court seeking to enjoin McCormick from proceeding further in the replevin action, and in his bill McKinnon asked that McCormick be required to pay a reasonable rental for the unauthorized use of the truck and trailer while they were in his possession. McCormick answered the bill and made his answer a cross bill, and the cause was heard by the chancellor in vacation by agreement of the parties upon all of the issues involved.

The chancellor found that McCormick had paid to the YMAC the sum of $837 which was due and owing by McKinnon to the YMAC at the time the truck and trailer were stored with McCormick, and that McCormick had had repairs made on the truck and trailer which amounted to $139.20. The two items aggregated the sum of $976.20. The chancellor found that while the equipment was in the possession of McCormick, McCormick had driven the truck approximately 5,000 miles. The chancellor found that the truck had been driven approximately 2,000 miles for the purpose of showing the same to prospective buyers in Alabama, Louisiana and Mississippi; and that the truck had been driven an additional 3,000 miles without authority from McKinnon. The chancellor found that a reasonable rental for the equipment was 25 cents per mile, and that McCormick was indebted to McKinnon in the sum of $750, as a reasonable rental for the use of the truck and trailer while they were being used for purposes not authorized by McKinnon. And the chancellor deducted that amount from the $976.20 that McKinnon owed McCormick and rendered a decree in favor of McCormick for the sum of $226.20. The chancellor imposed a lien on the truck and trailer to secure the payment of the said sum of $226.20 to McCormick, and ordered that said sum be paid within 15 days from the date of the decree. The chancellor ordered that the costs be divided equally between the two parties.

The first point argued by the appellant as ground for reversal on this appeal is that the proof offered by the appellee to establish his counterclaim was insufficient to show with reasonable certainty an unauthorized use of the truck and trailer by the appellant, or the extent of such unauthorized use, if such unauthorized use had been made of the truck and trailer while they were in the appellant's possession.

McKinnon testified that the mileage shown on the speedometer of the truck had been increased approxi-

mately 5,000 miles during the time that the truck and trailer were in McCormick's possession. Three witnesses testified for McKinnon concerning the unauthorized use of the truck and trailer by McCormick while the truck and trailer were in his possession. O. C. Thornton testified that he saw sand and caterpillar tracks on the trailer bed, which indicated that the trailer had been used, when he passed through the City of Forest during the latter part of January while the trailer was stored on the yard at McCormick's garage. Harold Jeffcoat testified that on January 21 he saw McKinnon's truck, with a "lowboy" trailer attached to it, go out from McCormick's place of business and return about an hour later with a bulldozer on it. Hershel Gray testified that he saw McKinnon's truck and trailer about the middle of January parked during the nighttime near Highway No. 80 in the City of Vicksburg. The trailer was attached to the truck and was loaded with what appeared to be shrubbery. The witness stated that he was able to identify the truck because he had driven the truck for McKinnon.

McCormick's proof showed that the truck had been driven, with McKinnon's knowledge and consent, to points in Alabama, and to Shreveport, Louisiana, and to Natchez, to be shown to prospective purchasers, and that the truck had been driven to Jackson four times for repairs. In explanation of the additional mileage shown on the speedometer McCormick testified that when McKinnon left the truck with him, McKinnon suggested that McCormick have the speedometer set back to 40,000 miles. McKinnon admitted that he and McCormick had agreed to have the speedometer set back. McCormick testified that he sent the truck to Jackson for the purpose of having the speedometer set back approximately 40,000 miles, but a few days later he decided to have the speedometer set forward again, and he sent the truck back to Jackson to have that done.

B. F. Womack testified that when the truck was brought to the Womack Brothers Shop in the City of Jackson on January 15, he set the speedometer back approximately 40,000 miles. He did not make a record of the speedometer reading before he set the speedometer back, but after the speedometer had been set back the speedometer reading was 40,130 miles. When the truck was brought back to him three days later he set the speedometer forward, so as to show a reading of approximately 88,000 miles.

McCormick denied that he had used the truck and trailer for any purpose of his own while they were in his possession, and several other witnesses testified for McCormick to the same effect.

There was much testimony concerning the speedometer readings, the readings of the hour meter, and the rate of speed at which the truck could be driven; and the evidence on these matters was conflicting. After both sides had rested the chancellor called several other witnesses to testify as court witnesses. But their testimony was of little value.

The chancellor, after hearing all of the testimony, found, as we have already stated, that the truck had been driven approximately 5,000 miles while it was in the possession of the appellant. The chancellor deducted from the total mileage the estimated mileage consumed in making the trips to Montgomery, Alabama, Shreveport, Louisiana, the City of Natchez and other places, for the purpose of displaying the truck to prospective purchasers; and, after deducting that mileage, the chancellor found that the truck had been driven approximately 3,000 miles for other purposes. And the chancellor held that the appellee was entitled to recover on his counterclaim a sum equal to the reasonable rental value of the use of the truck and trailer while they were being used for such unauthorized purposes.

We think that there was sufficient evidence to justify the chancellor's finding that the truck and trailer

had been used for unauthorized purposes while they were in the possession of the appellant under the bailment agreement. And we also think that there was sufficient evidence to justify the chancellor's finding that the truck had been driven approximately 3,000 miles while it was being used for purposes not authorized by the appellee, and that the reasonable rental value of the use of the truck and trailer was 25 cents per mile. ██ The appellee was not required to prove each separate use of the truck and trailer while they were in the possession of the appellant to enable him to recover on his counterclaim. Nor was he required to prove the exact total mileage. When he had proved with reasonable certainty that the equipment had been used while it was in storage for unauthorized purposes, recovery was not to be denied merely because he was unable to prove the exact extent of the unauthorized use that had been made of his property.

In the case of Hawkins Hardware Co. v. Crews, 176 Miss. 434, 169 So. 767, the Court said: ". . . it is not necessary that the damages to property caused by the wrongful act or omission of another shall be proved with precision to the exact dollar. When the cause of the damages is reasonably certain, recovery is not to be denied because the data in proof does not furnish a perfect measure thereof. Montgomery Ward & Co. v. Hutchinson, 173 Miss. 701, 707, 159 So. 862."

In the case of Linen Thread Co. v. Shaw, 1 Cir., 9 F. 2d 17, 19, the Court said: "The rule that damages, if uncertain, cannot be recovered, applies to their nature, and not to their extent. If the damage is certain, the fact that its extent is uncertain does not prevent a recovery." See also Billups Petroleum Co. v. Hardin's Bakeries, ...... Miss. ......, 63 So. 2d 543; Rule v. McGregor, 117 Iowa 419, 90 N. W. 811; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U. S. 555, 51 S. Ct. 248, 75 L. Ed. 544; Shields v. Booles, 238 Ky. 673, 38 S. W. 2d 677.

It is next contended on behalf of the appellant that in no event should the appellant have been charged more than $494.25 for the alleged unauthorized use of the truck and trailer. This contention is based upon the appellant's interpretation of the evidence relating to the hour meter readings during the time the truck was in the appellant's possession, the rate of speed at which the truck might be driven, and other facts which had to be taken into account in determining the number of miles that the truck had traveled while it was being used for purposes not authorized by the appellee. But on this point we cannot substitute our judgment for that of the chancellor. We must accept the chancellor's findings. The evidence was conflicting, and the chancellor was in a better position to weigh the testimony than we are. ▮▮ It is well settled by the decisions of this Court that, in cases of this kind, where the evidence is conflicting, the findings of the chancellor will not be disturbed on appeal, unless it appears that the chancellor's findings are manifestly wrong. Griffith's Mississippi Chancery Practice, 2d Ed., par. 674, and cases cited.

It is next contended that the chancellor erred in denying to the appellant the right, by cross-examination, to determine the whereabouts of the truck at the time of the trial. ▮▮ We think that such cross-examination should have been allowed and that the chancellor erred in refusing to require the appellee to answer the questions propounded to him concerning the whereabouts of the truck at the time of the trial. But the erroneous ruling of the court on the admissibility of this evidence had no material effect upon the result of the trial, and we would not be justified in reversing the decree of the chancellor because of his erroneous ruling on that point.

▮▮ It is next argued that the court erred in dismissing the replevin action with prejudice and in failing to render a judgment against the sureties on the appellee's

replevin bond. But the record shows that the parties agreed that the right of the parties should be determined in the suit in the chancery court. There was no consolidation of the replevin suit with the suit in the chancery court, and the sureties on the appellee's replevin bond were not made parties complainant or parties defendant to the chancery court suit, by amendment or otherwise, and for that reason the court did not err in refusing to render judgment against the sureties on the replevin bond.

Finally, the appellant contends that the court should not have taxed one-half of the costs against the appellant. But we think that the division of the costs in this case was equitable, and there is no merit in the appellant's contention that a greater portion of the costs should have been taxed against the appellee.

For the reasons stated above the decree of the lower court is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Arrington* and *Lotterhos, JJ.,* concur.