BULLOCK, et ux. v. GREEN, et al.

No. 39544 May 16, 1955 80 So. 2d 37

*Dent & Dent,* Collins, for appellants.

*John K. Keyes,* Collins, for appellees, B. Pat Green and Ernest Tannehill.

*Welch, Gibbes & Graves,* Laurel; *Neal Clement,* Yazoo City, for appellee, The Southland Oil Company.

McGehee, C. J.

This is a suit filed by E. Ray Bullock and wife Shelly Q. Bullock to set aside and cancel a deed of trust executed in favor of the Southland Oil Company on February 5, 1952, and which was assigned for a valuable consideration, long after maturity, to the appellee B. Pat Green. The ground on which the cancellation was sought was that the complainants signed the deed of trust under duress to avoid allegedly threatened criminal prosecution of Mr. Bullock by the beneficiary named therein. From a decree in favor of the said assignee, finding that the instrument was not executed under duress, this appeal is prosecuted.

On and prior to December 19, 1951, the appellant E. Ray Bullock was the distributing agent of the Southland Oil Company of Yazoo City, Mississippi, for petroleum products, automobile tires, etc., at Collins in Covington County. On that date he had become indebted to the Southland Oil Company for the sum of $6,949.77. The indebtedness had accrued by reason of the failure of the said Bullock to remit to the Southland Oil Company

the proceeds, less his commissions, of the sales of these commodities which had been sent to him on consignment. The books of this distributing agent had not been audited subsequent to April of that year, and when the accumulated indebtedness had reached the sum of $6,-949.77, and Mr. J. F. Aldridge, a representative of the Southland Oil Company, and Mr. Marble, one of its attorneys, went to Collins on December 19, 1951, and discussed with the distributing agent the amount of his indebtedness to the Company with the view of ascertaining what plan could be worked out for the payment of the amount then due, an agreement was reached whereby Mr. Bullock was to execute a note for the indebtedness then due and to be secured by a deed of trust on one G. M. C. truck, one Plymouth automobile, and 80 acres of farm land.

Thereupon Messrs. Aldridge and Marble went to the county courthouse with Bullock, where they remained in the car while Bullock went in the courthouse and prepared or caused to be prepared the deed of trust. He then signed the note and deed of trust, and was allowed to continue as distributing agent for the Company in Covington County. The deed of trust was not placed of record for the reason that, according to the testimony of Mr. Aldridge, its recordation might interfere with Bullock being able to obtain a loan on his residence property in Collins, the proceeds of which was to be applied to the indebtedness.

According to the testimony of Mr. Aldridge and Mr. Marble they did not go into the courthouse with Mr. Bullock at the time the deed of trust was prepared for the reason that they did not desire to give any publicity to the situation which necessitated the taking of the security, pending the collection of an account receivable in the sum of approximately $1,300 and the consummation of a loan on the debtor's residential property.

On February 5, 1952, Mr. Aldridge returned to Collins and while there he learned from Mr. Bullock that the

loan on his residence had been obtained but that the check had been applied to an indebtedness due a local bank; and that the bill receivable in the sum of approximately $1,300 which had been owing by the County to the said Bullock had in the meantime been paid to him, and he further found on that date that the indebtedness of Bullock to the Southland Oil Company had reached the total sum of $8,247.40 by reason of the failure of this distributing agent to deposit to the credit of the Southland Oil Company in a local bank the proceeds of other sales made since December 19, 1951, less his commissions.

In view of the condition then existing, Mr. Aldridge advised the Company of the facts and with the result that the Company sent Mr. Marble back to Collins where he and Mr. Aldridge reached an agreement with Bullock that the latter would give a new note for the $8,247.40 and a deed of trust on his residential property in addition to the property covered by the first deed of trust, and that in consideration of his doing so he would be given a further chance to try to pay off this indebtedness out of his commissions each month, upon the theory that he would earn enough profit from a pulpwood business to defray his living expenses. They then went to the courthouse, where Aldridge and Marble remained in the car while Bullock went in the courthouse and either prepared or caused to be prepared the deed of trust of February 5, 1952. On account of the homestead being included in that deed of trust Mr. Marble advised Mr. Bullock that it would be necessary for his wife to sign the same.

It appears that Mrs. Bullock had gone to Laurel to visit her parents that afternoon and would not return to Collins until after 5 o'clock. In the meantime Marble returned to Jackson and was not present when the Bullocks signed the deed of trust on February 5, 1952, before John B. Pope, a notary public, in the presence of Mr. Aldridge, who had remained in Collins for the return of

Mrs. Bullock in order for her to join her husband in the execution of the deed of trust late that afternoon.

Mr. Marble testified that while he was not present when Mrs. Bullock returned to Collins and signed the deed of trust, there had been no mention made throughout the day as to any proposed criminal prosecution of Mr. Bullock, and that neither was there any threat of prosecution on December 19, 1951, in connection with the execution of the first deed of trust. He stated in substance that the desire of the Southland Oil Company, as well as that of Mr. Aldridge and himself, was to work out a plan whereby Mr. Bullock could pay off the indebtedness, and that this was made clear to him.

The debtor was permitted, under a subsequent agreement that he should apply only $400.00 per month of his commission as distributing agent on the debt, to continue the operation of the business as a local distributor until March 19, 1953, when his agency was terminated and he was then replaced by the appellee B. Pat Green, who then purchased the $8,247.40 note and deed of trust on which there was at that time a balance due of $4,028.46.

Mr. Aldridge testified that when Mrs. Bullock returned from Laurel to Collins that Mr. Bullock called her to one side and that they had a conversation but that he, the witness, did not hear what was said. Mrs. Bullock testified that Mr. Aldridge said to her immediately before the deed of trust was signed, "I have some papers for you to sign. Let's go across the street to the Pope Company." And that he further said, "Go ahead and sign these papers and we won't prosecute Ray for embezzlement." But Mr. Aldridge emphatically denied that he said anything to Mrs. Bullock about "prosecution" or "embezzlement." When questioned specifically about the statement that he is alleged to have made to her, he was asked, "Q. Did you have any conversation of a similar sort with her? A. None whatever other than a friendly greeting. Q. Did you mention prosecution or embezzlement to her? A. No, sir. Q. Or no related

word? A. No word that would come near it." He further testified that Mrs. Bullock appeared to be at ease and carefree and that she did not make any protest to him about signing the deed of trust. She testified that her husband told her before she left for Laurel that day that "I may be in jail when you get back."

Although the bill of complaint filed by both Mr. and Mrs. Bullock, seeking to have the deed of trust cancelled on the ground of duress, alleges that "The said Aldridge accused your complainant of embezzling and advised him that he had come to the Town of Collins to charge the said Ray Bullock with the crime of embezzling, and that he would immediately file charges * * * if the said Bullock did not execute a deed of trust on all of his property to secure the sum of money due and owing the Southland Oil Company," the said complainant E. Ray Bullock did not testify as a witness at the trial to support the above allegation, since he was then in the hospital as a result of an automobile wreck, but it was agreed that if present he would testify "that he signed the deed of trust and note under duress and not of his own free will." This agreement as to what he would testify makes no specific reference to threats of criminal prosecution.

Thus it will be seen that the chancellor's finding that the note and deed of trust were not executed under duress but were good and valid instruments, was based on conflicting testimony of Mr. Aldridge and Mrs. Bullock, who appeared before him in person, and the general statement as to what Mr. Bullock would testify to if present. Hence we would not be warranted in reversing the chancellor's finding in that behalf since he had a right to accept the testimony of Mr. Aldridge if he believed it to be true, it is well settled that this Court does not reverse a finding of fact by a chancellor unless we are satisfied that his conclusions are manifestly wrong.

But the appellants further contend that the trial court erred in not sustaining their plea of res adjudicata and estoppel based upon the institution of a replevin suit by the appellee B. Pat Green against E. Ray Bullock in the circuit court for the possession of the Plymouth automobile described in the deed of trust here involved, and which replevin suit terminated in favor of the defendant E. Ray Bullock. It appears that the replevin suit for the possession of the Plymouth automobile was brought upon a conditional sales contract, a bill of sale, a mechanic's lien, etc., held by B. Pat Green under assignment, and that the defendant E. Ray Bullock in addition to his plea of not guilty in the replevin suit had filed a counterclaim of $250 for actual damages and $5,000 as punitive damages, for the alleged wrongful suing out of the writ of replevin, the counterclaim being filed under Chapter 249, Laws of 1952. The jury returned a verdict for the defendant in the replevin suit and assessed his damages at $250.

In answer to the counterclaim the plaintiff in replevin set up the indebtedness due him under the note and deed of trust here in question, and the defendant raised the question in the replevin suit of whether or not the note and deed of trust for $8,247.40 was executed under duress, and it is contended by the appellants here that since the jury decided the replevin suit in favor of the defendant therein, E. Ray Bullock, the jury found in effect that the deed of trust was in fact executed under duress. The entire proceedings in the replevin suit, together with the testimony, instructions, etc., were introduced in evidence in the instant case in support of the plea of res adjudicata and estoppel. But we find an order of the circuit court of July 18, 1953, finding "that the said plea of defendant entitled 'Claim and Demand Against Plaintiff by Way of Counterclaim, in Recoupment,' should be stricken, in its entirety, from this cause." It was so ordered.

 █ Therefore, the issue as to the validity of the note and deed of trust involved in the instant case and the claim for punitive damages were not submitted to the jury under the instructions of the circuit court in that replevin suit. Moreover, the only parties to that suit were B. Pat Green and E. Ray Bullock and it involved only the right of possession to the automobile based on a conditional sales contract, etc.; whereas the instant suit is between E. Ray Bullock and his wife Shelly Q. Bullock as complainants against B. Pat Green, as holder of the deed of trust herein sought to be cancelled, the trustee in the said deed of trust, and all of the partners or joint venturers in the Southland Oil Company. █ This Court held in the case of Creegan, et al. v. Hyman, et al., 93 Miss. 481, 46 So. 952, that "before the plea of res adjudicata can prevail, four things must be shown: '(1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality in the person for or against whom the claim is made.' "

This is a suit not only to have the note and deed of trust declared void, as having been executed under duress, but is a suit wherein a temporary injunction was granted to prevent a pending foreclosure of the deed of trust, which are matters in regard to which the circuit court could have had no jurisdiction in the replevin suit, except as to the Plymouth automobile described in the affidavit and writ of replevin and also described in the deed of trust.

The temporary injunction was dissolved by the chancellor and a sale of the property under the deed of trust was ordered sold by a commissioner to satisfy the remaining indebtedness. The judgment in the replevin suit having ordered that the defendant therein, E. Ray Bullock, should retain possession of the Plymouth automobile, it was not sold under the decree in the instant case, the special commissioner having reported that he was unable to obtain the possession of the Plymouth automo-

bile which he had advertised for sale. Therefore, presumably the defendant in the replevin suit, to whom the Plymouth automobile was awarded, has been allowed to retain the fruits of his victory in that case.

The decree of October 24, 1953, appointing a commissioner to sell the other property described in the deed of trust for the satisfaction of the indebtedness then found by the chancellor to be due, and the decree of February 15, 1954, confirming the sale of the said property, should be and the same are hereby affirmed.

Affirmed.

*Hall, Kyle, Arrington* and *Gillespie, JJ.,* concur.