LITTLE *v.* DALRYMPLE, et al.

No. 42097 December 18, 1961 135 So. 2d 403

*Adams, Long & Adams,* Tupelo, for appellant.

*Fred P. Wright,* Amory; *Mitchell, McNutt & Bush,* Tupelo, for appellee.

RODGERS, J.

This is a suit for damages based upon the alleged breach of a year to year farm lease contract, and from an adverse decree, appellant appeals to this Court.

The appellant W. J. Little filed his bill in the Chancery Court of Monroe County, against Arch Dalrymple III, Mrs. Kathleen Dalrymple his mother, and his two sisters, who are partners in the operation of several farms in Monroe County. The bill charged that Arch Dalrymple III was the agent of the partnership, and that the appellant entered into a contract, in the fall of 1953, with the partnership to farm certain cotton land belonging to the appellee for the year 1954. In the year 1954 the appellant entered into a new contract for the use of all the cotton land belonging to the partnership, which included the land rented during the crop season of 1954, except a small amount of land being worked by another tenant. This contract was continued without renewal for the year 1955, but in the fall of 1955 there was a swap of certain land known as "lost bottom" for 40 acres of additional land, so that appellant, as a tenant of appellees, cultivated 285 acres of land in cotton for the year 1956. The bill of complaint charged that appellant was a tenant from year to year on the lands of the appellees. It was alleged that in the spring of 1957, on the 25th day of March, appellee Arch Dalrymple asked the appellant to abandon his contract to a certain part of the property he was then farming so that he could put this land into the Government Soil Bank Program. The appellant alleges that he would not agree to this unless he was given a part of the Soil Bank benefits, and that he went before the "County Committee" and advised them of the fact that he was a tenant on the property; that the "County Committee" would not permit the land to be taken out of cultivation unless he, the tenant, was given an adjustment or a part of the Soil Bank rentals; and that the appellees lost their appeal to the State Board to obtain benefits under the Soil Bank Program. The appellant charges that after having failed in his effort to participate in the Soil Bank Program without a release from appellant, the appellee Arch Dalrymple broke

the contract and advised him that he would not be permitted to farm any of the land, and notified the appellant's sub-tenants or day workers, who were living on the property, to immediately leave the Dalrymple property. Appellant alleges that he went upon the lands and found other tenants there, and that he was threatened so that he was forced to leave the land he had contracted to work. He alleges that he had purchased a great deal of heavy equipment with which to farm the property, and that as a result of the action of the appellees he was damaged in a large sum.

The defendants, appellees here, answered the bill and denied the allegations of the bill and stated that it had been agreed in the fall of 1956, that the "Gin Place" would be changed into a cattle farm, and that the appellant was given other land in lieu of the "Gin Place". The appellees then attempted to put the "Gin Place" into the Soil Bank Program, but that the appellant told appellee Arch Dalrymple he would work the rest of the property on the condition that if any of the balance of the land was put into the Soil Bank appellant would receive a share of the payment; that the Soil Bank application fell through because appellant would not release his claim and appellant would not work any of the property, and that the appellees had to employ others to work the property. Appellees deny that they are due any money to the appellant. Appellees reported to the court the amounts made on the various pieces of land worked by other tenants; the appellees also claimed that they had to pay a certain fine because the appellant produced more cotton than the appellees were allotted. The answer is made a cross bill and requests payment from Mr. Little for the fine and damages for the breach of the contract for the year 1957. The appellant filed his answer to the cross bill and denied that he owed the appellees damage, or that he was due to pay the landlord's fine.

The appellant, in his well written brief, agrees that the question presented to the Chancellor in the court below as to whether or not appellant was a year to year tenant, was resolved in favor of the appellees in conflicting testimony, and that the question as to whether or not there was a new agreement for the year 1957, reducing the land allotted to the appellant from 280 acres to approximately 150 acres, was a question of fact and was resolved in favor of the appellant. The appellant, however, vigorously maintains that: "After the contract of 1957 for the remaining acreage had been agreed upon, - - - Arch Dalryample III, attorney in fact for the appellees, broke the contract." The appellant claims that there is no substantial testimony in the record to sustain the Chancellor's holding that appellant Little broke the contract.

It is apparent from the record, that no controversy had arisen between the parties until some time in the spring of 1957, when the appellant made demand upon the appellees for a part of the soil bank benefits. The Chancellor held that the "Cotton Gin Place" was not rented to the appellant in the fall of 1956 for the year 1957, and the appellant was therefore not entitled to any part of the soil bank benefits because the appellant had not rented the land; nevertheless the appellant admits that he told Arch Dalrymple in February 1957 that he would go ahead and work the 150 acres if he would pay appellant part of the soil bank check.

The appellant testified that a Mr. Scribner, a partner of Arch Dalrymple III, called and told him that, unless he signed a release so that Mr. Dalrymple could put the place in the Soil Bank, appellant would not be permitted to farm any of the Dalrymple land.

A part of the testimony with reference to the request made to Sam Parham to look out for more land for appellant, was objected to and this unexplained testimony is of little value to this Court. The testimony does

reveal, however, that the appellant told John Parham that he was not going to work the land, and asked him not to work any of it either. Moreover, appellant did not make any effort to begin work on the land until the middle of April, although his tenants had been given notice to vacate the property by April 6th, and the testimony of Mr. Dalrymple indicates "it was getting pretty late by then, about the middle of April".

■■ The appellant contends that the statement made by him to Arch Dalrymple that "If he would pay me part of the soil bank check that I would go ahead and work it," was a conditional statement and that the appellees had no right to anticipate a breach of the contract on the part of appellant based upon an equivocal statement. He points out the general rule that "In order to give rise to anticipatory breach of a contract the defendant's refusal to perform must have been positive and unconditional," and cites 5 Williston and Thompson, Contracts, Per. Ed. 1937, Section 1324; 12 Am. Jur., Contracts, Section 393; Old Ladies Home Assn., et al. v. Hart, 212 Miss. 67, 52 So. 2d 650.

The appellee Arch Dalrymple admitted he anticipated that appellant would breach the contract, but states he did not try to get a tenant in place of Mr. Little until April 15 although he had asked Mr. Rogers to check to see if he might be able to get somebody in the event Mr. Little would not work the land and stated that it was getting late to begin a crop.

■■ The definition of an anticipatory breach of a contract is one committed before the time has come, when there is a present duty of performance, and is the outcome of words or acts evincing an intention to refuse performance in the future. If it does not precede the time of performance — it is not anticipatory. 12 Am. Jur., Contracts, p. 969, Sec. 391.

■■ The Chancellor stated in his finding of fact: "The Court is of the opinion that under the proof in

this case it appears that the breach was made by Mr. Little as there is no proof showing that he made any attempt to work any of this land, and stood idly by and allowed Mr. Dalrymple to secure other tenants to work the land.'' We cannot therefore hold, under the testimony in this case, that the Chancellor did not have substantial evidence on which to base his decree.

■■ ■ The appellees pointed out the rule, and the appellant admits, ''that where the evidence was conflicting, the Chancellor's findings on a disputed question of fact will not be disturbed on appeal if supported by substantial evidence and not manifestly wrong.'' Boatwright v. Horton, 233 Miss. 444, 102 So. 2d 373; Shipman v. Lovelace, 214 Miss. 241, 58 So. 2d 657; Hastings v. California Co., 129 So. 2d 379; Smith v. Fanning, 25 So. 2d 481, (Miss. 1946).

It is apparent to us that the Chancellor reached the correct solution of the problems presented in this case, and that the judgment of the trial court should be affirmed.

Affirmed.

*Lee, P. J.,* and *Kyle, Arrington* and *McElroy, JJ.,* concur.