McCAFFREY, et al. *v.* MILLS, et ux.

No. 43023          October 12, 1964          167 So. 2d 816

*Edward J. Currie, Sr., Edward J. Currie, Jr.,* Hatties-burg, for appellants.

*William V. Murry,* Hattiesburg, for appellees.

KYLE, P. J.

This case is before us on appeal by J. L. McCaffrey, Sr., and Daniel W. Dabbs, Trustee, defendants in the court below, from a decree of the Chancery Court of Forrest County rendered in favor of Mrs. Reba Copling Mills, complainant in the court below, in a suit filed by Mrs. Reba Copling Mills seeking cancellation of a promissory note for the sum of $7,000, dated March 14, 1962, and a mortgage deed of trust of even date therewith on the unexpired leasehold interest in approximately two acres of Sixteenth Section School land owned by the complainant, purportedly signed by complainant and her husband, John B. Mills, such cancellation being sought on the ground that the complainant's purported signature to each of said instruments is a forgery.

The original bill of complaint was filed by Mrs. Reba Copling Mills against J. L. McCaffrey, Sr., and Daniel W. Dabbs, Trustee in the above mentioned mortgage deed of trust, on April 26, 1962. In her bill of complaint the complainant alleged that she was the owner of the unexpired leasehold interest in the above mentioned parcel of land said lease being a 25-year lease which had

been executed and delivered by the Forrest County Board of Supervisors to complainant's father and mother on August 3, 1953; that the defendants had recently caused her title to become clouded by having recorded a deed of trust purportedly signed by the complainant and her husband, John B. Mills, bearing date March 14, 1962, and purporting to secure a promissory note for the sum of $7,000 of the same date, due fifteen days after the date thereof. The complainant further alleged that although the above mentioned note and deed of trust purported to bear her signature, such signature was in fact a forgery and was not her signature that she did not sign either of the two instruments or authorize any other person to sign her name thereto; that the property described in said deed of trust was complainant's homestead; that complainant did not receive any consideration by reason of said instrument, and she did not know that the instruments existed until she received a letter from the defendant McCaffrey's attorney demanding payment of the note alleged to be secured by the deed of trust. The complainant further alleged that the defendant, J. L. McCaffrey, Sr., knew at the time he placed said deed of trust of record that the complainant did not sign the instrument, and that he knew that the complainant was not present at the time the notary public executed the certificate of acknowledgment of said instrument by the grantors, and that he well knew that no consideration whatsoever passed in support of the alleged conveyance.

The complainant further alleged upon information and belief that the defendant, J. L. McCaffrey, Sr., willfully, knowingly, with the unlawful intention to cheat and defraud the complainant, by threats of imprisonment and criminal prosecution, caused the complainant's husband, John B. Mills, to sign his name to the note and deed of trust and also the name of the complainant. The complainant therefore prayed that upon the hearing of

the cause the court would enter a decree cancelling of record the above mentioned deed of trust as a cloud upon the complainant's title and awarding to the complainant a money judgment for the sum of $1,000 as actual damages and $5,000 as punitive damages. The record shows that John B. Mills approved and joined in the bill of complaint, and that the bill of complaint was duly sworn to by Mrs. Reba Copling Mills and her husband John B. Mills.

On May 22, 1962, the defendant, Daniel W. Dabbs, filed a formal answer in which he admitted that he had been named as trustee in the deed of trust described in the complainant's bill, but averred that he had no personal knowledge concerning the transaction between the parties mentioned in the instruments.

The defendant, J. L. McCaffrey, Sr., filed his separate answer to the bill of complaint on June 12, 1962, and in his answer the defendant admitted that he claimed an interest in the above described land under and by virtue of the above mentioned deed of trust. The defendant denied that the signature of the complainant as it appeared on the deed of trust and the record thereof was a forgery. The defendant denied that the complainant had no knowledge of the deed of trust until she received a letter from the attorney for the defendant demanding payment of the note secured by the deed of trust. The defendant denied that the complainant's husband, John B. Mills, was intimidated and threatened with criminal prosecution by the defendant or was coerced into signing his name and the name of the complainant thereto; and the defendant denied that the complainant was entitled to any relief whatever against the defendant or the above named trustee. The defendant averred in his answer that on March 14, 1962, the complainant and her husband John B. Mills for value received, executed and delivered to the defendant their promissory note for the sum of $7,000 due and payable

to the defendant fifteen days after date; that demand
had been made for the payment of said note, but the
complainant and her husband, John B. Mills, had failed
to pay the same, or any part thereof; and that the de-
fendant and his codefendant, Daniel W. Dabbs, Trustee,
had filed their bill of complaint in the Chancery Court
of Forrest County against the complainant and her hus-
band, John B. Mills, seeking a personal decree against
complainant and her husband for the full amount of
said note and seeking a foreclosure of the above men-
tioned deed of trust. The defendant therefore moved
that the two causes be consolidated for trial, and upon
the hearing thereof that the complainant's bill be dis-
missed and that the defendants be granted the relief
sought by their bill of complaint.

The record shows that the bill of complaint filed by
J. L. McCaffrey, Sr., and Daniel W. Dabbs, Trustee, as
complainants, against John B. Mills and Reba Copling
Mills, as defendants, seeking foreclosure of the deed of
trust, was filed on May 10, 1962; that separate answers
were filed by John B. Mills and Reba Copling Mills on
May 25; and that an order was entered by agreement
of the parties on June 22 consolidating the two causes
for trial by the chancellor in vacation.

The causes were heard by the chancellor in vacation
on August 16, 1962. The record consists of three volumes
of testimony. At the conclusion of the hearing the chan-
cellor dictated into the record his findings of facts as
follows: The chancellor found from the evidence that
on March 14, 1962, John B. Mills, for value received,
executed and delivered to J. L. McCaffrey, Sr., his
promissory note for the principal sum of $7,000 pay-
able to J. L. McCaffrey, Sr., Fifteen days after date,
with interest at the rate of eight percent per annum after
maturity, together with 15 percent attorney's fee in the
event of default in the payment of the note. The chan-
cellor found from the evidence that no promises or

threats were made by J. L. McCaffrey, Sr., or anyone else, to induce John B. Mills to execute and deliver the note to McCaffrey; that the note was a valid obligation in all respects; that John B. Mills was indebted to McCaffrey on said note in the principal sum of $7,000, and McCaffrey was entitled to a decree against John B. Mills for said sum, with interest and attorney's fees as provided for in the note. The chancellor also found that John B. Mills had executed and delivered to J. L. McCaffrey, Sr., as beneficiary, and to Daniel W. Dabbs, as trustee, the deed of trust dated March 14, 1962.

The chancellor further found that the evidence that Reba Copling Mills did not execute the above mentioned note and deed of trust; that some woman, other than Reba Copling Mills, wrongfully impersonated Reba Copling Mills and wrongfully affixed and forged the name of Reba Copling Mills to said note and deed of trust; that there was no liability upon the said Reba Copling Mills by reason of the execution and delivery of said note and deed of trust, and that the said J. L. McCaffrey, Sr., was not entitled to recover any amount from the said Reba Copling Mills. The chancellor further found that John B. Mills did not affix the signature of his wife, Reba Copling Mills, to the note and deed of trust, but in the opinion of the court some woman, other than the said Reba Copling Mills, impersonated the said Reba Copling Mills and wrongfully affixed and forged the name of Mrs. Mills to the note and deed of trust.

A final decree was entered in conformity with the chancellor's findings on September 29, 1962. From that decree J. L. McCaffrey, Sr., and Daniel W. Dabbs, Trustee, defendants in the suit for cancellation of the above mentioned note and deed of trust, and complainants in the suit for foreclosure, have prosecuted this appeal. The complainant-defendant, John B. Mills, has also filed a cross appeal and a cross-assignment of errors.

The appellant's attorney has assigned and argued two main points as grounds for reversal of the decree of the lower court: (1) That the chancellor's findings of facts, insofar as they were adverse to the appellants, were manifestly wrong and contrary to the overwhelming weight of the evidence; and (2) that the chancellor's findings of facts and his final decree, insofar as they were adverse to the appellants, were predicated upon an issue not raised by the pleadings of any of the parties.

After a careful review of the testimony we think there is ample evidence in the record to support the chancellor's finding that the complainant, Mrs. Reba Copling Mills, did not execute the above mentioned note and deed of trust, and that there was no liability upon Mrs. Reba Copling Mills by reason of the execution and delivery of the note and deed of trust.

In view of the nature of the appellants' assignments of error it is necessary that we summarize briefly the testimony of the witnesses.

The defendant, J. L. McCaffrey, Sr., being called to testify as an adverse witness by the plaintiff, testified that the note and deed of trust were executed in his private office in the 1900 block on Edwards Street, in the City of Hattiesburg, between the hours of one o'clock and three o'clock on the afternoon of March 14, 1962; that John B. Mills and Mrs. Mills were sitting directly across from him at the time they signed the note and deed of trust. McCaffrey stated that the $7,000 called for in the note represented the value of the chickens that Mills, who was a truck driver for Davis Poultry Company, had taken from McCaffrey's Columbia store and sold for cash money, without permission and without McCaffrey knowing it; that the chickens that Mills had sold were chickens assigned to the Columbia store by the Davis Poultry Company, Mills' employer. McCaffrey stated that he had a private detective checking into the matter for a period of several weeks; and Mills

admitted that he had taken approximately $7,000 worth of chickens from him; that Mills told him he had paid $1,700 for the land described in the deed of trust, and that he had taken the money coming from the sale of the chickens and paid for the property and also the lumber that went into the house. McCaffrey stated that he had known Mrs. Mills before she signed the note and deed of trust; that he had seen her just as a glance, and he had seen her in the store. McCaffrey denied that he had threatened to put Mills in jail. He admitted that he had never discussed the matter of the execution of the deed of trust with Mrs. Mills except at the time when she came in his office to sign the deed of trust, and that he did not know who the land belonged to. McCaffrey admitted that Mrs. Barbara McCaffrey, who took the acknowledgment to the deed of trust, was his daughter-in-law. He stated that she was present when the papers were signed, and several other employees were there in the building when the papers were signed. McCaffrey was later recalled for further examination by his own attorney.

Mrs. Reba Copling Mills, testifying in her own behalf, stated that she and her husband had been married about four years; that they lived in the Sunrise Community about two miles from the City of Hattiesburg, on a lot that she had bought from her father and mother in 1957; that there were two houses on the land; that her father and mother still lived in the house that was on the land at the time she purchased the property, and she and her husband were living in another house which they were in the process of building at the time of the trial. She stated that she had never seen either the note or the original deed of trust prior to the date of the trial; that she had only seen a record copy of the deed of trust at the courthouse. She stated that she did not sign her name to the note or the deed of trust; that the first time she knew anything about the note

and the deed of trust was when she received a letter from Mr. McCaffrey's attorney on April 16, 1962, in which he stated that the note and deed of trust had been turned over to him for collection. Mrs. Mills Stated that she had never discussed with Mr. McCaffrey or her husband, John B. Mills, or anyone else, the matter of executing a note and deed of trust to Mr. McCaffrey for $7,000; that she had never been in Mr. McCaffrey's office. She stated that she did not owe Mr. McCaffrey anything, that she had never met him and had never received any money from him, or anything else of value; that after receiving the letter from Mr. McCaffrey's attorney demanding payment of the note, she called the office of her attorney, and on April 21 she and her attorney went to the courthouse, and her attorney went to the courthouse, and her attorney showed her the record of the deed of trust where her name was forged. She stated that the only place she went to in the City of Hattiesburg on March 14 was Dr. Walter H. Dearman's office; that on that date Mrs. Chester Mills, her mother-in-law, who lived in Wayne County, came to Hattiesburg for an eye examination, and she went with her to Dr. Dearman's office; that she then went to the Super Service Store and bought some groceries, and returned to her home about 11:30 and helped her two sisters-in-law finish dinner for the family, and she did not leave the house any more that day.

Mrs. Mills identified her signature on a large number of cancelled checks which appear in the record, and also several other instruments admitted to be genuine, including a will which she had executed on July 5, 1957, a claim for hospital expenses which she had presented to an insurance company on May 9, 1957, and homestead exemption applications which she had filed for the years 1959, 1960, 1961 and 1962, and the bill of complaint filed in this cause. She stated that she and her husband started building the house in which they were living about

three years before the trial; that she had worked at the Steak House in the City of Hattiesburg while her husband was working for Davis Poultry Company; that she and her husband had borrowed $500 from Beneficial Finance Company to buy rough lumber for the house and also $500 from the Citizens Bank to help pay for building materials for the house; and they still owed money to both of those institutions. The house had not been completed at the time of the trial. Mrs. Mills stated that her husband first informed her that he had forged her name to the note and deed of trust on April 23 when she and her husband were in her lawyer's office. She stated that her husband never admitted to her that he had stolen $7,000 worth of chickens, or that he had been stealing chickens over a period of one and one-half years.

John B. Mills testified that he signed the note and deed of trust in Mr. McCaffrey's office between 12:30 and 1:00 P.M. on March 14, 1962. He stated that he also signed Mrs. Reba Copling Mills' name to the instruments. There was no one in the office with him at that time except Mr. McCaffrey. Mr. McCaffrey then called a lady to the door and handed her the papers. Mills did not know who the lady was. He did not see the papers any more after that. The figure $7,000 was not in the deed of trust at the time he signed it. Mills was asked to tell the court why he signed the $7,000 note and deed of trust. He stated that sometime prior to March 14 he received a telephone call from the plant where he worked and he was told that Mr. McCaffrey wanted to see him. When he got off from work he went to Mr. McCaffrey's office and Mr. McCaffrey told him that he had a warrant for his arrest, and about that time another man came in, who introduced himself as "John Box", but his real name was "John Ryder." Mills stated that the man told him that he was a former FBI man, and he could send him to jail. Ryder and

McCaffrey then told him that he had stolen chickens, and McCaffrey stated that he wanted Mills to take care of the matter as quickly as possible. Mr. McCaffrey wanted him to make a statement into the tape recorder admitting that he had stolen the chickens, and the amount of money he had received for them. Mills stated that he made the statement into the recorder with McCaffrey and Ryder standing there; that he told them that he had been taking chickens since the latter part of 1960, and he had sold them to people in Columbia. Mills testified he did not steal any chickens. He was then asked what caused him to admit that he stole chickens if he didn't do it. His answer was, ''Because since the war, Korean Conflict, I cannot have no bodily harm, one lick and I am a dead man.'' He was then asked, ''What is your ailment?'' His answer was, ''I have a silver plate in my head * * * It is loose, it don't stay. About every six months I have to go to the Veterans' Hospital and have them reset it.'' Mills was then asked whether he was threatened with bodily harm. His answer was that they told him they were going to lock him up. They also continued to call him at the plant wanting to talk to him, and that just shook him up and made him very nervous. Mills stated that he and his wife built the house on the parcel of land described in the deed of trust with money borrowed from the Citizens Bank and the Beneficial Finance Company. Mills stated that after he had signed the note and deed of trust, he did not tell his wife what he had done. The first time he ever admitted to her that he had signed her name to the note and deed of trust was when he and Mrs. Mills went to Mr. Murry's office after Mrs. Mills received the notice from Mr. McCaffrey's attorney that they were foreclosing the deed of trust.

On cross-examination Mills again was asked why he told Mr. McCaffrey and Mr. Ryder that he had sold the stolen chickens. His answer was, ''because they

were threatening to put me in jail.'' Mills stated that he had been employed by the Davis Poultry Company since April 8, 1958, every since he was discharged from the service by the U. S. Navy. Mills was asked whether he told Mr. McCaffrey and Ryder that he used the $7,000, or a good portion of it, in building his house. His answer was, ''Yes, sir.'' He was then asked whether that was true. His answer was, ''No sir.''

Gilbert J. Fortier of New Orleans, Louisiana, a professional examiner of questioned documents and a handwriting expert, testified that he had examined the signature of Reba Copling Mills on the note and the deed of trust referred to in the pleadings, and also the signature of Mrs. Mills on each of the cancelled checks and other instruments offered in evidence by the complainant which contained her genuine signature, and that in his opinion the signatures of Reba Copling Mills on the note and deed of trust were not written by the person who wrote the signature ''Reba Copling Mills'' on the cancelled checks and other instruments recognized as genuine. The witness then explained in detail the variations in the handwriting and stated the reasons for his conclusion that the signatures of Reba Copling Mills which appeared on the note and the deed of trust were not written by her.

Eight witnesses were called to testify on behalf of the defendants.

Rufus Alvis Scott testified that he had a degree as a graphoanalytical psychologist from the school of Graphoanalysis, Springfield, Missouri, and that he had examined the two signatures on the note and on the deed of trust, and in his opinion the signatures of John B. Mills and Reba Copling Mills were written by two different people. He had also compared the signature of Mrs. Reba Copling Mills on the two instruments with her signature on the pleadings and in his opinion they were written by the same person.

Barbara McCaffrey testified that she was married to Samuel C. McCaffrey, and that J. L. McCaffrey, Sr., was her father-in-law; that she helped her husband with the drygoods store in which Mr. J. L. McCaffrey, Sr., had no interest; and Mr. J. L. McCaffrey's office was next door to the building in which the drygoods store was located; that she had a commission as a notary public, and that she took the acknowledgment of Mr. and Mrs. Mills on the deed of trust involved in the present controversy. She stated that she prepared the note and deed of trust and witnessed the signatures of Mr. and Mrs. Mills when they signed the instruments. She stated that Mrs. Ruth Ingram, who worked in Mr. McCaffrey's real estate office, had prepared a note and deed of trust for Mr. and Mrs. Mills' signature, but before the instruments were executed it was found that there were errors in the deed of trust, and Mrs. Ingram requested her to come over to the office and prepare a new deed of trust. Barbara stated that Mr. and Mrs. Mills did not sign the note and deed of trust that day; but they came back the next day, and signed the note and deed of trust and she took their acknowledgments. Barbara was asked if the lady sitting in the courtroom and identified as Mrs. Reba Copling Mills was the lady who signed the note and deed of trust in her presence. Her answer was, "She is."

J. L. McCaffrey, Sr., was recalled to testify as a witness in his own behalf, and upon direct examination by his own attorney, McCaffrey stated that the note and deed of trust which Mr. and Mrs. Mills signed were prepared in McCaffrey's insurance office but the papers were signed in his inner office. McCaffrey stated that when he returned to his office after the lunch hour on March 14 Mr. and Mrs. Mills were there waiting for him, that Barbara McCaffrey was called in to take the acknowledgments; and the instruments were then signed

by Mr. Mills and Mrs. Mills in his presence and in the presence of Barbara, who took the acknowledgments.

McCaffrey was asked if a tape recording had been made of the statements given to him by Mr. Mills. His answer was that such tape recording had been made. McCaffrey then produced the tapes. He again stated that no threats had been made against Mr. Mills and no promise of reward had been offered to him. He stated that Mills knew at the time the tape recording was made that his statements were being recorded, and the record was played back to him after the recording had been completed. The tape recording showed that Mills admitted that he had sold the chickens to Stringer Brothers and Doc Beecham's Supermarket.

Several office employees of McCaffrey were called to testify as witnesses for the appellants on the issue as to whether the complainant Reba Copling Mills was the person who appeared at Mr. McCaffrey's office on March 14, 1962, and signed her name to the note and deed of trust.

Richard W. Madison, who handled accounts renewable for McCaffrey's Food Market, testified that he had seen Mr. Mills in Mr. McCaffrey's private office on two occasions. He was in the office on one occasion when Mr. McCaffrey and Mr. Mills were talking. They had made a tape recording, and he heard Mr. Mills admit that the value of the chickens he had taken was over $7,000. He was in the office on another occasion when Mrs. Mills was there, and there were papers on the desk. He had never seen the lady before. Madison stated that he believed the lady who was pointed out to him in the courtroom was the person he saw in Mr. McCaffrey's office. "That's her, I believe. Her hair is done differently and she is wearing glasses now, but her features to me — I believe it's Mrs. Mills." On cross-examination, he stated: "I am positive that her hair-do was different than it was and she did not have

her glasses on at the time I was in the office, she was sitting there in the chair." Daniel G. Dailey testified that he was employed by McCaffrey Real Estate Insurance Agency and was present at the McCaffrey Food Market at the time of the execution of the note and deed of trust by John B. Mills and Reba Copling Mills; that Reba Copling Mills, who was seated in the courtroom, was the Reba Copling Mills that he saw enter the building and go back into McCaffrey's private office. He did not recall ever having seen Mrs. Mills before that visit.

Walter Brewer testified that he kept books for McCaffrey's Tire Store and was one of the musicians on McCaffrey's "Showtime," that he had seen Mrs. Mills one time when she came there with Mr. Mills at the lunch hour. The witness was asked whether the lady sitting between John Mills and his attorney was the same lady whom he had seen at McCaffrey's office. His answer was: "Looks just like her to me. * * * To the best of my memory, that's her." On cross-examination the witness was asked, "Did she have on glasses?" His answer was, "I don't believe she did."

Teresa Walker, 17 years of age, testified that she was working at McCaffrey's Insurance Agency; that she had been working there for a period of nine months; that she was sitting at her desk and saw Mr. and Mrs. Mills going out of Mr. McCaffrey's office one time, and she saw them going in the office the second time. She could not be sure the couple she saw in the courtroom were the ones she saw the day the papers were signed. On cross-examination the witness stated that she saw the lady who came to Mr. McCaffrey office from the back and she could not say whether it was Mrs. Mills or not. She knew that there was a woman over there, but she could not say that the woman in the courtroom was the woman she saw leaving Mr. McCaffrey's office the day the papers were signed.

Mrs. Ruth Ingram testified that she had been employed by Mr. McCaffrey since the first day of March 1962; that she prepared some papers for Mr. Mills' signature; but the papers which she prepared were retyped later because of certain errors which she had made, and Mr. and Mrs. Mills came back to the office the second time for the purpose of signing the papers. Mrs. Ingram was asked to point out the persons in the courtroom who came to Mr. McCaffrey's office. Her answer was, "That's Mr. Mills, and to the best of my knowledge and can remember, thats Mrs. Mills." On cross-examination Mrs. Ingram stated she did not believe that Mrs. Mills had on glasses the day the papers were signed. She did not remember whether she had on a skirt or slacks.

Milliette Reese, who handled the advertising for the McCaffrey Insurance Company, testified that she became acquainted with Reba Copling Mills about three years before the trial; that Mrs. Mills was a waitress at the Steak House at that time and she saw her frequently when she went to the Steak House for coffee. Miss Reese stated that she had seen Mrs. Mills at Mr. McCaffrey's office one time, and that was on the occasion when Mr. and Mrs. Mills came to Mr. McCaffrey's office to sign the note and deed of trust on March 14, 1962. She said: "I was sitting at my desk and I looked up and saw Mrs. Mills come in and I looked her right in the eyes and she looked at me and really didn't even acknowledge my existence and walked on by into Mr. McCaffrey's office." She stated that Mrs. Mills was the lady who was sitting in the courtroom. Miss Reese stated that she was present when a part of the tape recordings referred to by Mr. McCaffrey were made, and she heard Mr. Mills say that he was a driver for Davis Poultry, and that in the past three years he had stolen chickens from Mr. McCaffrey and had sold them to other people, that he had taken about $7,000 worth.

On cross-examination the witness stated that she thought that Mrs. Mills recognized her when she and Mr. Mills came in to sign the papers, but Mrs. Mills did not speak to her. The witness was asked whether Mrs. Mills had on glasses. Her answer was, ''She had on glasses when she came in the office.

Four witnesses were called to testify for the appellee in rebuttal of the testimony offered on behalf of the appellants.

Mrs. Bobby Liverett testified that she was a sister-in-law of Mrs. Reba Copling Mills, that her husband was a brother of Mrs. Reba Copling Mills; that she lived in the Sunrise Community about a mile from Mrs. Reba Copling Mills' home; that she saw Mrs. Reba Copling Mills on March 14 about 7:30 A.M.; that she had taken her children to school early that morning because they had missed the school bus; that she came back by Mrs. Mills' home and stopped for a visit and remained there until about 2:30 P.M. A truck was driven into the yard about 9 o'clock and Mrs. Chester Mills, Mrs. Reba Mills' mother-in-law, and Mrs. Walter Cochran, Mrs. Reba Mills' sister-in-law, who lived at Clara in Wayne County, got out of the truck and came into the house. The purpose of their visit that day was to have Mrs. Reba Mills take her mother-in-law to Dr. Dearman's office to have her glasses changed. Mrs. Reba Mills and her mother-in-law left the house a little after 10 o'clock and returned about 11:45, and Mrs. Reba Mills did not leave her house again while the witness was there. The witness stated that John B. Mills came home for lunch about ten minutes after twelve and stayed about 15 minutes. He appeared to be upset. He seemed to be under a nervous strain and did not talk to anybody. He remained at the house about 15 minutes.

John Harvey Mills testified that he lived in Wayne County, and that he brought his sister-in-law, Mrs. Chester Mills, and her daughter, Mrs. Walter Cochran,

to the John B. Mills home on March 14, 1962. The purpose of their visit to Hattiesburg was to get Mrs. Chester Mills' glasses changed. It was a rainy day. The witness stated that they arrived at the John B. Mills home near Hattiesburg around 9 o'clock; that Mrs. Mills and Mrs. Cochran got out of the car at the John B. Mills home; that he went back to the John B. Mills home and picked them up about 4:30 P.M., and they returned to their homes in Wayne County.

Mrs. Chester Mills testified that she was the mother of John B. Mills, and that she lived at Clara in Wayne County; that she had John Harvey Mills, her brother-in-law, bring her to Mrs. Reba Copling Mills' home near Hattiesburg on March 14, 1962, for an eye examination by Dr. Walter D. Dearman; that she arrived at Mrs. Reba Mills' house around 9 o'clock and got Mrs. Reba Mills to carry her to Dr. Dearman's office; that she and Mrs. Reba Mills came back to Mrs. Reba Mills' home between 11:30 and 11:45. The witness further stated that Mrs. Reba Mills remained at her home from the time she returned from the doctor's office until the witness left about 4:30 P.M. to return to her own home at Clara. The witness stated that her appointment to see the doctor was made for March 14 because that was Mrs. Reba Mills' day off from work.

Mrs. Walter Cochran testified that she lived at Clara in Wayne County; that she came to Hattiesburg on March 14 with her mother, Mrs. Chester Mills, to visit her sister-in-law, Mrs. Reba Mills; that John Harvey Mills drove the truck in which they were riding; that they arrived at the John B. Mills' home near Hattiesburg around 9:00 or 9:30 A.M.; that Mrs. Bobby Liverett was at the John B. Mills home when they arrived, and she and Mrs. Liverett cooked dinner for the family while Mrs. Reba Mills and Mrs. Chester Mills went to see the eye doctor; that Mrs. Reba Mills and Mrs. Chester Mills left the John B. Mills' home arount 10 o'clock and got

back between 11:30 and 12:00 o'clock. The witness stated that she and Mrs. Chester Mills remained at the John B. Mills' home until 4:30 and Mrs. Reba Mills did not leave the house again that day while they were there; that John B. Mills came in about 12:10 o'clock for lunch, and stayed only a few minutes; that he appeared to be very nervous and upset and ate very little.

Mrs. Reba Mills was recalled by her own attorney for further examination in rebuttal of the testimony of the appellant's witnesses concerning her alleged visits to McCaffrey's office and the signing of the note and deed of trust. She again stated that she had never been in Mr. McCaffrey's office at any time, and she did not know Mr. McCaffrey personally until she saw him in the courtroom on the first day of the trial. She again stated that she went to Dr. Dearman's office with her mother-in-law during the morning of March 14 about 10 o'clock to have her eyes examined; that she returned to her home at a quarter before 12 o'clock, and she did not leave the house again at any time after that; that she knew nothing about the note and deed of trust until April 16, when she received the letter from Mr. McCaffrey's attorney in which he stated that the papers had been turned over to him for collection or foreclosure of the deed of trust. Upon being questioned by the court she stated that she had worn glasses constantly since 1941; that she wore them constantly because if she went without them she would suffer headaches and her eyes would hurt; that she never went about town or any place without them.

The basic issue which the chancellor had to decide in this case was a disputed issue of fact as to whether or not the purported signatures of Mrs. Reba Copling Mills on the note and on the deed of trust dated March 14, 1962, were forgeries. It can be readily seen from what we have stated above that there was a direct conflict in the testimony of the witnesses on that issue.

It has been repeatedly held by this Court that the findings of the chancellor on disputed issues of fact will not be disturbed by this Court on appeal, unless it appears that the chancellor's findings are manifestly wrong. Stovall v. Stovall, 218 Miss. 364, 67 So. 2d 391; Little v. Little, 218 Miss. 467, 67 So. 2d 462; McCormick v. McKinnon, 219 Miss. 184, 68 So. 2d 301; Smith v. Batesville Security Bank, 222 Miss. 38, 75 So. 2d 77; Bullock v. Green, 224 Miss. 278, 80 So. 2d 37; City of Picayune v. Quick & Grice, Inc., 238 Miss. 429, 117 So. 2d 718, Little v. Dalrymple, 242 Miss. 365, 135 So. 2d 403; Campbell v. Campbell, 249 Miss. 670, 163 So. 2d 649. See also Griffith's Mississippi Chancery Practice, Second Edition, 1950, Sec. 674, and cases cited.

The chancellor in this case was the trier of the facts, and the chancellor had a right to believe the testimony of Mrs. Mills and the several witnesses who testified on her behalf. The chancellor had before him not only the testimony of the witnesses who testified on behalf of each of the respective parties, but also the questioned documents, showing the signatures alleged to have been forged, and numerous other instruments, including cancelled checks, showing the genuine signature of Mrs. Reba Copling Mills, and the chancellor found that the purported signatures of Mrs. Reba Copling Mills on the note and deed of trust were forgeries. We think it cannot be said that the chancellor's finding that the purported signatures were forgeries was manifestly wrong or against the overwhelming weight of the evidence.

The fact that the chancellor found that the forgeries had been committed, not by John B. Mills, as alleged by the complainant in her bill upon information and belief, but by some woman other that Mrs. Reba Copling Mills, who had wrongfully impersonated Mrs. Reba Copling Mills and had wrongfully affixed and forged her name to the note and deed of trust, in no way affected

the validity of the chancellor's finding that the purported signature of Mrs. Mills to each of the instruments was a forgery and for that reason the instruments were utterly void as to her.

For the reasons stated above the decree of the lower court will be affirmed on the appellants' direct appeal.

■■■ The appellee and cross-appellant, John B. Mills, in his cross-assignment of errors, has assigned and argued three points as grounds for reversal of that part of the decree of the lower court awarding judgment against him in favor of J. L. McCaffrey, Sr., for the sum called for in the note dated March 14, 1964, as follows: (1) That the appellant failed to prove that cross-appellant was indebted to him; (2) that the note for $7,000 was voidable at the option of the cross-appellant for lack of consideration; and (3) that the note was voidable at the election of the cross-appellant because of duress.

We have given careful consideration to each of the three points mentioned in the cross-assignment of errors, and we think it cannot be said that the chancellor was manifestly wrong in his finding that the note was executed by John B. Mills for a valuable consideration, and that the note was a valid obligation of John B. Mills, and that McCaffrey was entitled to a decree against Mills for the amount sued for.

We find no reversible error in the record, and the judgment of the lower court is therefore affirmed on the appellants' direct appeal and on the appellees' cross-appeal.

Affirmed on direct appeal and on cross-appeal.

*Ethridge, Rodgers, Brady, and Patterson, JJ.,* concur.